IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOCELYN AZZI,

              Plaintiff

v.                                         CASE NO. 3:08-cv-755-REP

TRANSUNION, LLC, *et al.*,

              Defendants.

## PLAINTIFF'S CORRECTED MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, Jocelyn Azzi, by counsel, and in support of her Motion for Partial Summary Judgment, she states as follows:

### *OVERVIEW*

There is nothing remarkable about the facts or the claims supporting liability in this case. It is an ordinary case prosecuted under a provision of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681s-2(b), that was fleshed out and defined by the Fourth Circuit half a decade ago. Johnson v. MBNA, 357 F.3d 426 (4th Cir. 2004). The unremarkable conclusion of Johnson was that a credit card account could not be "verified" as accurate in a credit reporting dispute by a furnisher that did not investigate and review sufficient underlying documents to establish and prove the obligation. See 357 F.3d at 432. Now, in this Motion, another consumer, a woman like Linda Johnson whose ex-husband similarly declared bankruptcy on a credit card account he acknowledged as his sole responsibility, repeats nearly the exact same set of arguments against Palisades that were necessary to support a verdict against MBNA.

1

In this Motion for Partial Summary Judgment, Ms. Azzi asks the Court to enter Partial Summary Judgment on Defendant's Affirmative Defense that the account was reported accurately when the Defendant responded to Equifax, Trans Union and Experian **"Verified", "Dispute Resolved" and that the challenged debt belonged to the Plaintiff**.1

### *STATEMENT OF UNDISPUTED MATERIAL FACTS*

The following material facts are undisputed:

1. Palisades reported a credit card account as a collection in the credit reports of the Plaintiff at Equifax, Trans Union and Experian.  That account was apparently a former Chase or Bank One credit card account that Palisades had purchased from a third party.

2. Palisades has never had any documents in its possession for this account that were signed by any consumer – for example, no signed application and no charges slips.  (Deposition of Monica Bey, March 19, 2009, p. 45, line 17 – p.46, line 9)

3. Palisades has never had any documentary evidence that the Plaintiff opened, applied for, authorized or used the Account.  (Deposition of Monica Bey, March 19, 2009, p. 45, line 17 – p.46, line 9)

4. The Account did not belong to Ms. Azzi.  She never applied for, used or agreed to be responsible for the Account.  (Exhibit 1, Declaration of Jocelyn Azzi, ¶ 5).

---

1 It is also certain that the Defendant's investigation procedures violated the FCRA, 15 U.S.C. §1681s-2(b).  However, there is little added judicial economy to resolve such a dispute at this stage when the Court by bench trial will still have to consider the degree and extent of the violation to assess an amount of punitive damages.  Accordingly, the Plaintiff has not now moved for Summary Judgment on all matters.

5. Ms. Azzi was married to Arthur F. King, Jr. in 1996 and divorced from him in 2007. (Exhibit 1, Declaration of Jocelyn Azzi, ¶ 2).

6. Arthur F. King, Jr. filed Bankruptcy in 2008, and his attorney was John Roberts. (Exhibit 2, Bankruptcy Schedule of Mr. King Produced by Palisades).

7. The Account belonged to Mr. King.

   a. It was identified as his account in communications between Palisades and his attorney. (Exhibit 3, Correspondence between Palisades and Mr. King's Attorney).

   b. Mr. King listed the Account in his Bankruptcy schedules. He stated that it was his obligation. (Exhibit 2, Bankruptcy Schedule of Mr. King Produced by Palisades, p. ASTA-392,393).2 He also stated that he did not have any co-debtor on the Account. (Id., p. ASTA-399).

## *STANDARD OF REVIEW*

Under rule 56(d), the court may adjudicate less than all the claims at issue in an action for the purpose of establishing facts which are not in good faith controverted:

> (d) Case Not Fully Adjudicated on Motion. If on Motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the Motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the

---

2 The Plaintiff has not redacted the address contained within the Bankruptcy Schedule as it is known that the address is no longer that of Mr. King. The exact same document is also publically available on PACER.

action, the fact so specified shall be deemed established, and the trial shall be conducted accordingly.

*Fed. R. Civ. P. 56(d).*

Under this rule, the court has authority to examine evidence and to interrogate counsel to determine which facts are actually in controversy. Further, the court may use the Rule 56(d) Motion as a procedural device to narrow the issues for trial to those for which there is evidence. *Bell Microproducts, Inc. V. Global-insync, Inc. et als.*, 20 F.Supp.2d 938, (E.D. Va. 1998)(J. Ellis).

While the present matter is pending for a Bench trial, there is still significant benefit to the Court and to the litigants in a resolution of significant, but not materially disputed (or disputable) issues in the case. For example, while there is no evidence that the Plaintiff opened, used or authorized the subject account, Defendant has refused a stipulation of such for trial and even argues in its own Summary Judgment motion that its reporting was correct. This will force the Plaintiff and the Defendant to include in their significant trial preparation, exhibits and pre-trial Order a large number of additional documents that era entirely uncontested by the Defendant. It will also require inclusion of same in the electronic trial presentation expected by the Plaintiff in this case. A primary purpose of Rule 56(d) is to permit the Court's narrowing of the case by the earlier disposition of such undisputed issues and allowing the parties to rely on such disposition. Second Circuit Judge Newman explained in *Leddy v. Standard Drywall, Inc.*:

> Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims. If, as allowed by Rule 54(b), the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an

>opportunity to present evidence relating to the newly revived issue. Failure to do so might in some circumstances cause substantial prejudice.

875 F.2d 383 (2d Cir.1989).

Before the Court ever considers another issue in the case, it can and should first determine if there is a meaningful dispute as to whether or not the Defendant can establish its affirmative defense that the Plaintiff is indebted on the Palisades account.  In light of the undisputed facts in this regard, the question of formation of a contract is a legal question entirely appropriate for disposition on the papers, rather than at trial.  *See e.g*. Alabran v. Capital One Bank, 2005 WL 3338663 (E.D. Va. 2005)(Dohnal) ("The court concurs that there are no disputed material facts remaining after resolution of the Defendant's motion concerning whether the Plaintiff was or was not obligated on the subject indebtedness. FN10 ['Because the Defendant cannot produce the application for the first card and does not contend that the Plaintiff signed the second one as a co-obligor. (Findings ¶ 2)'] such that the resolution of the issue of the accuracy of the information is a question of law that would have to be resolved by the court anyway at some point.").  *See also* Robertson v. J.C. Penney Co., Inc., 2008 WL 623397 (S.D. Miss. 2008) (Summary Judgment granted against a credit furnisher under 15 U.S.C. §1681s-2(b)).

The question of what documents exist to establish a contract may be factual, but the question of whether or not specific evidence is sufficient to create a contract is one of law. Whether the Court makes this decision now, or delays it until trial, the Court will still have to render a legal decision rather than a factual one, as "the resolution of the issue of the accuracy of the information is a question of law that would have to be resolved by the court anyway at some point."  Alabran, at *8.

### *ARGUMENT*

### PALISADES DISPUTE RESPONSES TO EQUIFAX, TRANS UNION AND EXPERIAN WERE NOT ACCURATE.

The core and unstated controversy between credit furnishers like Palisades and consumers like Ms. Azzi really boils down to this:  Palisades believes that it is entitled to report derogatory information about a consumer until and unless she disproves the indebtedness while Ms. Azzi believes that no private person or business has a right to report inaccurate information about her that it can not prove is true.   Palisades believes that it could continue reporting a credit card debt as belonging to a consumer in the face if that consumer's dispute that it was not her account because its computer record included her name, address and social security number.  Nothing more.  This position is in direct conflict with the stated position of the Federal Trade Commission and with the Fourth Circuit's decision in Johnson v. MBNA, 357 F.3d 426 (4th Cir. 2004).

In its most important furnisher compliance litigation to date, the FTC filed suit against and entered into a Consent Decree with Performance Capital Management, Inc. (PCM), a credit card debt buyer just like Palisades furnisher of credit information subject to § 1681s-2.  (Exhibit 4, Performance Capital Management Complaint)(Exhibit 5, Performance Capital Management Consent Order).[3]  Among the FTC's allegations was that upon receiving a CDV form from a CRA, "it is the practice of PCM to compare the name, address, and information in PCM's computer database with the information provided on each consumer dispute verification form.  Where the two match, PCM reports that is has verified as accurate the information in its file."

---

[3] http://www.ftc.gov/os/2000/08/performconsent.htm;

The Consent Decree defined this as noncompliant with the FCRA, § 1681s-2(b) and entered the following injunction enjoining PCM from "failing to properly investigate consumer disputes, as required by Section 623(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), when consumer reporting agencies refer disputes to the defendant pursuant to Section 611(a)(2), 15 U.S.C. § 1681i(a)(2)."

> To do so, the FTC stated:
>
> In order to comply with Section 623(b) when a consumer disputes the accuracy of information reported by the defendant to a consumer reporting agency, defendant shall either verify the information with the original account records within the time period set forth in the Fair Credit Reporting Act or take all necessary steps to delete the information from the files of all consumer reporting agencies to which the information was reported. <u>In any situation where the defendant either knows that no original records exist, or is informed by the original creditor that no records exist, the defendant shall, within five business days after receiving the consumer dispute, notify all consumer reporting agencies to which the information has been provided that the information is to be deleted from the file of the consumer who has disputed the account</u>[.]

Id., Section II.

Similarly, the Fourth Circuit also concluded that a furnisher does not accurately report an account as "verified" when it lacks any underlying documents to establish the debt. The Court stated in <u>Johnson</u>, a case nearly identical to this one:

> In particular, MBNA relies on testimony that, pursuant to its five-year document retention policy, the original account application was no longer in MBNA's possession. Even accepting this testimony, however, a jury could reasonably conclude that <u>if the MBNA agents had investigated the matter further and determined that MBNA no longer had the application, they could have at least informed the credit reporting agencies that MBNA could not conclusively verify that Johnson was a co-obligor.</u>FN4 <u>See</u> 15 U.S.C.A. § 1681i(a)(5)(A) (West 1998) (providing that <u>if disputed information "cannot be verified, the consumer reporting agency shall promptly delete that item</u> of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation") (amended Dec. 4, 2003).

---

http://www2.ftc.gov/os/2000/08/performcomp.htm.

357 F.3d 426. As in <u>Johnson</u>, the Defendant responded to the consumer's dispute that it had "verified" the account – a representation that the Fourth Circuit clearly held to be inaccurate in circumstances where the furnisher does not have the underlying documents to prove the indebtedness.

When the Defendant received the Plaintiff's disputes, it possessed literally no documentary evidence linking its credit card account to the Plaintiff. In fact, as recently as March 19, 2009, Defendant so stipulated. At the deposition of the Defendant's single witness in this case, Monica Bey, the following stipulation was reached:

> Q. Have you had an opportunity to determine if there are any original documents, that is any account record documents for the Azzi account, credit card application or charge slips, anything with signatures on it at all?
> A. I don't recall.
> MR. BENNETT: Counsel, will you stipulate that you do not have anything ever signed by any consumer related to this account?
> MR. ROSSMAN: Presently in our possession, I will stipulate to that, correct.

(Deposition of Monica Bey, March 19, 2009, p. 45, line 17 – p.46, line 9). In contrast, the Plaintiff testified under penalty of perjury in her Declaration, as she did in her deposition, that: "I have never applied for, used or agreed to be responsible for this Chase/Bank One credit card account. It is not mine and never has been." (Exhibit 1, Declaration of Jocelyn Azzi, ¶ 5).

Other documents produced in this case by Palisades are much worse. For example, while Defendant could not convince Mr. King to attribute the Bank One/Chase credit card debt to Ms. Azzi, it already had in its possession formal sworn filings from the United States Bankruptcy Court in which Mr. King swore under oath that this account was the responsibility of "H", standing for "Husband" in the formal bankruptcy schedules. (Exhibit 2, Bankruptcy Schedules

of Mr. King Produced by Palisades, p. 392). He also testified that he owed this debt without any co-debtors. (Id., p. 399). There was also contemporaneous exchange between Palisades and Mr. King's attorney in which Mr., King's lawyer referred to the debt solely as Mr. King's debt and Palisades responded with similar reference. (Exhibit 3, Correspondence between Palisades and Mr. King's Attorney).

There is nothing more. The question for the Court is whether in light of this, Defendant could prove that the Plaintiff Ms. Azzi was contractually obligated to pay its credit card account. As a matter of law, it has not and cannot. As concluded by Judge Dohnal in Alabran, the burden of proof to establish liability for ownership and payment of a credit card is always on the credit card issuer. Fifth Third Bank/Visa v. Gilbert, 478 N.E. 2d 1324 (Ohio). This is true as a matter of federal law. 15 U.S.C. §1643(b). Further, absent proof of a written request for a credit card or consent to same, there cannot be a contractual obligation for such a debt.[4] Va Code § 11-31. *See also* Va Code § 11-33 (permitting the use of a "certified copy" of a written application, consent or use of a credit card as the lone evidentiary alternative). A creditor on such a debt may not maintain any action or claim on a note or other obligation to repay money based originally on a written instrument, such as a credit card application and cardmember agreement, unless the written agreement is signed by the alleged debtor. Va Code § 8.01-27.

---

[4] "A cardholder, who receives a credit card from an issuer, which such cardholder has not requested nor consented in writing to the issuance of such credit card, nor used the credit card, shall not be liable for any amount owing because of a use of the credit card. The failure to destroy or return an unsolicited credit card shall not be evidence of such request or consent nor shall it constitute negligence on the part of the cardholder. Use by an authorized agent of the cardholder shall be the equivalent of use by the cardholder. The burden of proving the authority of an agent shall be upon the issuer." (Emphasis added).

Even if this Court were to break new ground and find that Palisades could assert an obligation to pay an account otherwise not supported by anything signed by the asserted debtor, there is no evidence produced by the defendant to rebut the unqualified testimony of Ms. Azzi and Mr. King (in his Bankruptcy schedules).

Accordingly, Defendant's already limited evidence produced in this case is actually and thus nothing more than a statement that "we have the following documents in our files." But even these limited documents beg the very question of this case. Ms. Azzi has never denied that Palisade's computer stated that she was a responsible party on her husband's account. Instead, she contends that Defendant's computer records are wrong.

Despite the length of time otherwise available to the Defendant since the date it first reported that the Chase account had been conclusively "verified" as the contractual responsibility of the Plaintiff, it has not discovered, created or presented any actual or relevant evidence that the Plaintiff applied for, consented to or used the disputed account. Even more amazingly, the Defendant does not offer any explanation to explain its failure to produce a authenticated credit application, or a single charge slip, credit card convenience check, payment check or even letter signed by the Plaintiff.[5]

---

[5] Under the "adverse inference rule," when a party has relevant evidence within its control that the party fails to produce, that failure gives rise to an inference that the evidence is unfavorable to that party. United Auto. Workers v. NLRB, 459 F.2d 1329, 1336 (D.C.Cir.1972); Fernandez v. Chios Shipping Co., 542 F.2d 145, 155 (2d Cir.1976); Tupman Thurlow Co. v. S.S. Cap Castillo, 490 F.2d 302, 308 (2d Cir.1974); NLRB v. Advance Transp. Co., 965 F.2d 186 (7th Cir.1992); P.R. Mallory & Co. v. NLRB, 400 F.2d 956, 959 (7th Cir.1968), *cert. denied*, 394 U.S. 918, 89 S.Ct. 1191, 22 L.Ed.2d 452 (1969); Rockingham Machine-Lunex Co. v. NLRB, 665 F.2d 303, 304-05 (8th Cir.1981); United States ex rel. C.H. Benton, Inc. v. Roelof Const. Co., 418 F.2d 1328, 1332 (9th Cir.1969).

*CONCLUSION*

Accordingly, for the reasons stated herein, the Court should grant Plaintiff's Motion for Partial Summary Judgment.

                                      RESPECTFULLY SUBMITTED,
                                      JOCELYN AZZI,


_____/s/_____
Jason M. Krumbein, Esq. VSB# 43538
KrumbeinLaw@gmail.com
Mitchell P. Goldstein, Esq. VSB# 40613
Mgoldstein@Krumbein.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
(804) 673-4358 - Telephone
(804) 673-4350 – Facsimile

Leonard A. Bennett, Esq.
VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net


Attorneys for Plaintiff

CERTIFICATE OF SERVICE

      I hereby certify that on this 02nd day of April, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**S. J. Robert Slemp. Esq.**
**Jeffrey A. Fleishhauer, Esq.**
**John S. Hubbard, Esq.**
**John C. Lynch, Esq.**
**John K. Rossman, Esq. (Pro Hac Vice)**
**Micahel S. Poncin, Esq. (Pro Hac Vice)**
**Phillip J. Young, Esq. (Pro Hac Vice)**
**Counsel for Palisades Collection, LLC**

                                                                                       _____/s/_____
                                              Jason M. Krumbein, Esq. VSB# 43538
                                              KrumbeinLaw@gmail.com
                                              Krumbein Consumer Legal Services, Inc.
                                              1650 Willow Lawn Drive, Suite 300
                                              Richmond, VA 23230
                                              (804) 673-4358 - Telephone
                                              (804) 673-4350 – Facsimile